For you now, Mr. Pesci. Yes, Mr. President. All right, well, good morning. May it please the Court, my name is Ross Pesci. I'm here on behalf of Jabari Wright. Judges, I was preparing for this last night, reviewing all the briefs, and it occurred to me that we had done a good job of framing the arguments, but potentially not done a great job of framing the larger context in which this case is brought before the Court. And the first, you know, there's two issues that we have. One is about the burden of proof between the parties, and one is about mootness as a defense during litigation. The first issue about the burden of proof is actually currently the two-to-two tie between four different circuit courts. Not including us, right? Not including you.  You get to break the tie. Okay, tell us how we should break it. Well, you should break it in favor of us. What does that really mean? It means that you should break it in favor of people with disabilities, because the Americans with Disabilities Act was created to vindicate the rights of people with disabilities and not the rights of business owners. And that's the fundamental question that's before you. Why does it use the word achievable, if that's the standard? Why does it talk about a process and all the other stuff? Correct. It was a compromise legislation from the word go. I would say that I view it in this way, Judge. The Americans with Disabilities Act created a scheme where people with disabilities could bring lawsuits. We could bring lawsuits, and if we were able to prove that we had a disability that was a public accommodation, and in this case, that there was an architectural barrier, then at that point, we would have made a prima facie case, and the defendants would have to provide evidence about whether or not the repairs that we wanted them to make were readily achievable. And there's a lot of arguments about that. If you're thinking about, for example, the Colorado Cross case, which is the sort of seminal decision that I think adopts the business owner point of view, okay, or the Molsky decision, the major issue that they're talking about there is who has to show what and why. Well, doesn't the statute tell us something when you look at the definition of discrimination in the statute and you look at, how do you say it, subsection little four? Yeah, subsection 121822. That one. Exactly. Yeah, that one. And in that is that discrimination is a failure to remove the architectural barriers, which is what the plaintiff brings in the complaint, but also says where such removable is readily achievable. Why is that not part of the burden of proving the discrimination? I think it is. You know, if you look at the very next subsection, it says when the entity can prove that the architectural that is not readily achievable, then they don't have to make the fix. So when you're looking at subsection four, right, it says that it's discrimination when there's a barrier and removing it is readily achievable. And then the very next subsection, it says readily achievable is a defense that has to be proven by the defendants. So it's not discrimination if there's a barrier and it's not readily achievable. That's what subsection four is saying. And then it goes on in the very next statute to say the readily achievable must be proven by the entity. So that is I mean, that's the answer to your question. Never. As I mean, if we continue on that sort of topic, it's two to two. And I think if you look at the way that the decisions have come out, the 10th Circuit and the 11th Circuit were the first two decisions to reach this issue. And then it was Molsky, the 9th Circuit, and the 2nd Circuit and Royal Atlantic Corporation, which is mentioned in the briefs, but it's not clearly framed in terms of the context. They rejected the Colorado Cross paradigm of these lawsuits. And they made some really good points. Like, for example, the access to information argument that we have made, right, that we are not in control of the information about what is readily achievable and what is not readily achievable. You agree you have to have plausible information, though, and you have to make a plausible allegation, right? Off the bat. Yes. Yeah. So now doesn't that mean that the Colorado Cross kind of a shifting burden way is the way to do this, like we do in so many other areas of discrimination? Well, I agree that we should have to show that there's an architectural barrier, OK, and that there's a plausible fix to it. But it's really the key. When you get into the weeds, if you go the Colorado Cross direction, you get into a situation where you start asking what is enough, what is not enough, and you get into the weeds. You get into a swamp. So what's enough as a plausible fix, if that's your approach? If you concede from Judge Benton's question that you have to allege plausible fix, what does that look like, and how does it differ from the Colorado Cross case? Let me back up. OK, when I say do I have to have a plausible fix, I think that I have to identify that a barrier exists. And then I think that the burden shifts immediately to them to show whether or not it's readily achievable for them. OK, so I have to show that there is a barrier. I don't think that I should have to present any evidence. But if you're going to have the light burden that all of them really give us a light burden, the fact that there is an architectural barrier, the fact that it can be fixed, that there is some sort of cost associated with it, I don't think that we can be required to give architectural plans because that actually interacts with the second issue of mootness. If I, as a plaintiff and the plaintiff's attorney, go through the expense of filing a lawsuit, getting plans, going through discovery, giving them a contract for some certain architectural plans and how to do it, and then they fix it, then the case is mooted. And that would be the outcome of the district court's decision in this case. So that doesn't make it that you can't be required, as the Ninth Circuit said, to make those sorts of heroic efforts. You have to be able to say there's an architectural barrier, and then it's up to them to decide whether or not it's readily achievable. So in your position is that all the plaintiff needs to do is identify the architectural barrier? I think that that's right. And I would point out, since it's a two-to-two tie, I think that the Colorado Cross decision, as the initial decision, has sort of tainted all of the decisions that came back after it. So I would ask the court, and I mean this in all sincerity, look at the statute. The statute is the place to start. These other decisions, especially the Colorado Cross decision, if you look at that Ninth Circuit and what they said, you all are circuit court judges, and you would not call another circuit court decision, you wouldn't describe it as tainted because it failed to bring out certain statutes that would have allocated the burden in the exact opposite way of what they actually did in the historical context because they missed entire statutory portions of the case. So that Colorado Cross case was the seminal one, and it kind of created a mess, frankly. Well, let's assume for purposes of this question that the plaintiff does have to show something under subsection little four that it's readily achievable or a plausible fix. What would you propose to be the standard for that? I understand your initial position is no, we don't have to do anything on that phrase. But let's say that there is some, or what does that look like? I think that what we did in this case has got to be enough for multiple reasons, and the actual record in this case, I think, demonstrates why. We put in an expert who said this can be fixed in any number of three ways. Here are different prices. This is what can be done, and it is possible to get it done. We were denied at the district court level of having created a sufficient record about what was readily achievable because we did not put in enough information about whether or not the defendants could afford it. But if you look at the record, you see that we made an interrogatory requesting their financial information. They denied giving us their financial information. We made a motion to compel to receive the financial information. We didn't get it. We made a motion for sanctions requesting the financial information. Because it was related, we didn't get it. And then one month before the trial, they picked three financial records, put it in there, and said that we hadn't provided enough information. So when I talk about our case being a good example of the sort of – it's the burden that we have to show. They are in possession of their financial information, and they are in possession of the information relating to their building. And if they don't share it with us, how can we create the record? That's the issue, and it's clearly demonstrated in our case. That's the reason why we should only have to show that there actually is, in fact, an architectural barrier. And then it flips to them to say, well, we can't do it for whatever reason. If it's a historical building, in the historical building context, in the exact opposite of the Colorado Cross decision, the statute says that it's the defendants that have to show that any repairs are going to threaten the historical integrity of a building. So does that distinguish that case from the Colorado Cross case? That is the Colorado Cross case, and that's the reason why the Ninth Circuit said that it was tainted, because they didn't look at those statutes. But wasn't the Ninth Circuit focused more on the historical function, the historical aspect of the building, did it not? I think that the Ninth Circuit – that did involve this sort of historical building, yes. And the Ninth Circuit did invoke those statutes, but I think it clearly went to the issue of the Colorado Cross case and undermining the unity. But some federal judges in the Ninth Circuit have said that Mosky is limited to historic buildings. Flatly said that. I'm not saying that that's wrong. Well, they said it. Right, right, exactly. What I'm saying is that they clearly talk about how the Colorado Cross decision missed it. And the Colorado Cross decision is the case that the district court relied on and that I'm 100 percent sure that the defendants are going to try to talk to you about. So I think that that's the reason that the Mosky case is important. What about the – assuming – the district court had an alternative ruling here, did it not? That even if you carried – even if the plaintiff carried its burden, that the defendant had come forward and shown and presented evidence about alternative method of providing the service. Now, as a practical matter here, what's wrong with the alternative that's offered here as a practical solution to try to meet a legitimate issue, a legitimate problem with obtaining service? I think that what you're talking about, I think, is the credit card reader, right, that was the alternative that was put in to be able to pay at the counter at our liquor. You only get alternative methods if you can show that the actual repair is not readily achievable. And so our problem with that is that the defendant said that they could afford to make that fix. Now, the defendant said that they could afford to be in compliance with the ADA, and so there's no reason for them to even get to a reasonable alternative. Now, they have an obligation underneath the law to make the fix if they can. Why wasn't the finding that it wasn't readily achievable to fix the threshold a proper one, given the problems with the water flow and basically creating another hazard for both abled and disabled folk? I think it's really important to remember and look at the record because the water issue is currently existing on the property. The fix that we are asking them to make would not create a health and safety hazard. The health and safety hazard currently exists on the property. And on cross-examination, the expert admitted, because he had to, that water entering a facility and being at the entryway is already an ADA violation. So the district court's decision saying that not only do they not have to fix the water issue, which is a health hazard for everybody, but that that makes it so that they don't have to fix the threshold for a person with a disability to be able to enter and exit as required in the ADA, that, for me, that just didn't jive. You're in your rebuttal. You can use it now, but you're using your rebuttal. I'll rest. Thank you. Ms. McHugh. Good morning, judges. May it please the court, my name is Sarah McHugh and I represent Appalese R.L. Liquor with Daly and R2D2 Incorporated in this case. This case is about R.L. Liquor. R.L. Liquor is a decades-old classic mom-and-pop shop located in North Omaha. It's a shop that does its best just to get by on a daily basis and that treats its customers like family. In this case, if you look back at the record, you'll find that despite never being denied access to R.L. Liquor and despite never raising any issues at all with accessibility with anyone at R.L. Liquor, Mr. Jabari Wright filed a complaint alleging ADA accessibility violations against the Appalese in this case. But the district court didn't find he had standing, correct? And you're not disputing that? No, Judge Cunningham, we're not disputing standing at all in this case. Just disputing the fact that Mr. Wright actually had an issue accessing the property in this case. So immediately after receiving Mr. Wright's complaint, Ruth Daly in this case took action to retrofit the accessibility barriers in the parking lot at R.L. Liquor. And she did so by adding the accessibility striping for an accessible parking spot in the parking lot as well as adding an accessible parking sign next to the accessible parking spot. Notably, even after Mr. Wright filed his complaint in this case, he continued to use R.L. Liquor, to visit R.L. Liquor. And he had visited R.L. Liquor for three years before he ever filed a complaint alleging he was unable to access R.L. Liquor. That doesn't really affect the legal issues here, though, right? No, it does not affect the legal issues. Yeah, go ahead. Under Title III of the ADA, there are many distinct obligations that I want to outline quickly before getting into the meat of the case. Under Title III, when we're talking about new construction, and that's construction built after 1992, buildings that are new construction are required to comply with the Americans with Disabilities Act accessibility guidelines unless it's structurally impractical for them to do so. There are two other distinct routes. Those apply to existing buildings that were built prior to 1992 that have made alterations to their property. And for those types of buildings, they're also required to strictly comply with the accessibility guidelines. What we're talking about here is actually an existing building that was built prior to 1992 that did not make any alterations to the building after 1992. So for buildings that are existing buildings prior to 1992 that have not made alterations, those buildings, to the extent that there are architectural barriers at those buildings, removal of those architectural barriers might be required. But that's only to the extent that the removal of the barriers is readily achievable as it's defined in the statute. And why isn't that the entity's burden to show that it's readily approvable? As your opposing counsel points out in the little mini-subsections, the five, it directly discusses when an entity can demonstrate that the removal of the barrier is not readily achievable, then the entity has other options. Why doesn't that lay that squarely at the feet of the entity to prove that up? Sure. So when we're talking about mini-four and mini-five, our position is that under little four, it's actually the plaintiff's obligation to first establish that barrier removal is readily achievable. And then little five says to the extent that the entity can establish it's not readily achievable, that's a defense for the entity. So speaking more generally to your question, the obligation lies with the plaintiff, because for a couple of reasons, the plaintiff is the one who filed a complaint with the court, and it should be the plaintiff's obligation to establish that he's entitled to what he's asking for. So where does the failure to prove it's readily achievable stop, and the burden of proving it's not readily achievable begin? Sure. So there are several things that we need to consider when thinking about whether or not something is readily achievable, and those are all outlined in the statute for you. They include everything from the nature and the cost of what's being requested to a discussion of the overall financial resources at play, and then finally an impact on the operations of the facility if barrier removal is going to be undertaken. I think Colorado Cross correctly outlines where the plaintiff's burden stops, and then the burden shifts to the defendant. In particular, Colorado Cross, they outlined that they would like both specific alteration plans to show how the barriers are going to be removed as well as cost estimates. So after the plaintiff lays out those items for how they would like the barrier removal to be accomplished, then it becomes the defendant's burden to establish that the barrier removal is not actually readily achievable. How does a court distinguish between those? I mean, it seems to me that if a plaintiff comes forward and says this, and really has to prove up based on the same statutory factors that the entity would be using, look, this is readily achievable, and the court looks at that. What is left that they haven't analyzed under the statute that's remaining for the defendant to come forward with and say, no, no, this is not? Sure. So as I mentioned, there are several factors that can be considered when the plaintiff is arguing that something is readily achievable. Those include cost in nature, the overall financial resources, and the impact on the operations. If the plaintiff can lie out that some of those items establish that this is readily achievable, there are several items listed in the statute which the defendant could return with and say, the plaintiff has argued this is readily achievable for these reasons, but actually if you look at the statute, there are all these other reasons that show that it's not readily achievable. Our argument here, to be clear, is not that the plaintiff proved every single thing that's itemized in the statute to show that it's readily achievable. But the plaintiff has to be able to show something before the burden moves to the defendant. And so why wasn't the something enough in this case? That something was not enough in this case because Mr. Jabari Wright did not bring up any evidence in trial to establish that this barrier removal was readily achievable. Opposing counsel stated that they did, in fact, introduce expert testimony when what really happened was Mr. Wright came to the testimony without his own, or excuse me, came to the trial without his own proposed alterations or estimated costs and ended up actually trying to question defendant's witness in this case about proposed alterations and estimated costs. And while in some instances that might be enough, in this particular case, it actually ended up backfiring on Mr. Wright because the expert in this case, Mr. Larry Fleming, testified that, in fact, the barrier removal on this property was not readily achievable for a number of reasons. Those included the cost reasons that we briefly discussed, as well as the health and safety issues that you pointed out today related to water intrusion on the property and the health and safety of individuals that are visiting the property. Do you agree that all they have to do is make a plausible allegation of readily achievable? They being the plaintiff. Go ahead. I think you could use the terminology they have to make a plausible allegation of it being readily achievable, but that's going to include an analysis of the factors that I previously discussed and those include things like... Okay, are we talking at the pleading stage? This is a non-jury trial, right? You had a judge trial. Yes. Okay. Now, do we even have to address a lot of the stuff you're talking about because we've had a trial now? Can we avoid many of those issues that you and your opposing counsel are putting to us? Because now we've had a trial. Now this is kind of how much you have to do and who has the burden. Does it really matter at the end? Well, I think it matters in this particular case because not only are we talking about who has the burden in this case, but whether or not the court applied the burden correctly. Now, is this the ultimate burden? The initial... Doesn't everybody agree that the ultimate burden is on the plaintiff? Yes. Well, the initial burden to establish that barrier removal is readily achievable is with the plaintiff. If the plaintiff can establish that, then the burden shifts to the defendant. But isn't this like employment discrimination? Tell me if I'm wrong. Yes. At the end of the case, when you're done with the whole trial, the burden's on the plaintiff. Yes. To win with 51%, right? Yes. This civil case, right? Yes. Okay. So do we have to do anything besides the last stage of this and say there was 51% one way or another in this case? That's all we need to say? I suppose we could do that, Your Honor. But I think there are also other issues in this case related to the mootness of some of the specific features that we should also discuss. I'm speaking specifically as to the accessible parking at R.L. Liquor with regard to accessible parking. In this particular case, I mentioned that Ms. Ruth Daly had made physical changes to the property to ensure that there was accessible parking at R.L. Liquor immediately after she received the complaint from the plaintiff. She painted out that access aisle and hired someone to install an accessible parking sign on the property. The Eighth Circuit has actually said in cases where there have been structural changes to the property to allow accessibility under the ADA, that the issue becomes moot before the court. Once those physical changes have been made, there's no likelihood that the defendant is going to go back to their old ways. They physically changed those features on the property. Does it matter how quickly the entity reacts to a lawsuit or to the threat of a lawsuit in terms of whether we conclude that it is in fact moot? I think in some instances, how quickly an entity reacts might be relevant. And those are instances in which an entity has changed a policy, a policy that appears to be discriminatory on its face. I believe there's a case that Mr. Wright cited, the Sheely case, in which an entity changed its discriminatory policies that did not allow service animals to enter the place of public accommodation, but they waited until nine months into the trial, after discovery had already been served, and then changed their policy and said, this case is moot. This case is different because it involves physical changes to the property, and the question of timeliness, regardless of whether or not you want to consider timeliness in this particular case, Ms. Daly did take immediate action. The day after she received the complaint, she was down at city offices trying to figure out who could explain to her what these accessibility violations that were alleged, what they meant, what she needed to do, how she could help individuals with disabilities. The case I would refer you to is the Eighth Circuit case, Hickman v. State of Missouri. That's a case that involves physical changes to a state prison to install ramps, to install wheelchair chairlifts, and to make other changes of that nature to ensure that the state prison was accessible to individuals with disabilities. And in the Hickman case, the court said that because the state prison had made those physical changes to the property, the claim was moot with respect to those accessibility violations. I have a question, and what you just related brings the question up. You commented about the speed with which, in this case, the store owner responded when the complaint was served, and immediately took action to get education and to make changes that could be made. And you commented earlier that this store had been patronized for quite a period of time without any complaints being made by the plaintiff, and that there were no complaints made before the lawsuit was filed. And the district court noted the same thing in footnote 11 on page 14, where the court noted that Wright admits that during the three years that he claims he regularly visited Arnold Liquor prior to meeting Carter and filing his lawsuit, he never demanded or even inquired about accessibility issues. And so my question is, why did the district court mention that? Is that significant? Does it have any relevance? Either as this case was tried, or should it have any relevance or significance to this court as it takes up issues in the case? In the 10 seconds I have left, I will tell you that it's significant to the extent it shows that Mr. Wright was never actually discriminated against because he was not denied access in this case. I don't know if I can finish my thought. As long as Judge Hebert wants to talk to you, talk. It's significant to the extent it shows that he was never actually denied access in this case. The court did also point out, though, that the fact that Mr. Wright didn't make a complaint was not necessarily fatal to his issue, just telling on the fact that he was not denied access in the case. Thank you for your argument, Ms. McHugh. Thank you. Revival argument? If I can, Judge Shepherd, I would like to answer your question. The district court pointed out multiple things in footnotes, and I believe Ms. McHugh made some arguments right at the beginning that Judge Benton correctly asked, is that legally relevant? And I think that these cases, okay, they involve, there's 6,600 cases just like this were filed in 2016, and they pitted people with disabilities against people with their own businesses. And there are a lot of facts, whether or not my client had a problem, whether or not he could physically go over the threshold, whether or not he drove enough, that are legally irrelevant, but they're extremely emotionally powerful. And I don't think that we should discount that. Those are emotionally powerful arguments. There was a bargain that was struck by Congress when it passed the Americans with Disabilities Act that favored people with disabilities. It is not a positive law. As long as the changes are readily achievable, and they put this many-factor test in there. Correct, but it puts a burden. So it's a heck of a deal. It's a heck of a law. And there's salt on the wound all over it for the business owners. I am a small business owner. I'm not unhip to it. I mean, if you're a business owner, and you get sued in federal court, you've got to hire an attorney, and when you lose, because it's designed for you to lose, you have to pay my attorney's fees. That's salt on the wound, and that's emotionally powerful. And there's a reason why people look at it, and they fight against it. So why did the district court note that, note this fact? Because it's nice to know information, but otherwise totally irrelevant? I think that he himself wrote that it's not determinative, and there's quite a few things like that. He does throw in that it meant your client could effectively transact business there, and so there's not discrimination there. Yeah, but the problem is that discrimination is a defined term underneath the statute, and it's defined under subsection little four as a building that has an architectural barrier that is readily achievable for them to move. And I would point out that that is the definition of discrimination, right? Just the fact that it says readily achievable to remove in subsection four doesn't talk anything about who has the responsibility of proving what's readily achievable. The very next subsection does, and it says that the entity has to do it. But shouldn't the, in this case the store owner, have some notice that there's a condition that's problematic before they end up on the receiving end of a lawsuit in federal court? I think that that is a very strong emotional argument that has been brought by advocates for small business owners through their political representation, and is constantly brought as an amendment and a reform to the Americans with Disabilities Act. And so that is not a bad thing, but it's not in law. It's not in law. Okay, I think you've spent your time if Judge Shepard's done. He says he is, so thank you both for your arguments. Case number 17-1133 is submitted for argument, for decision.